# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GAIL SANDLE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 cv 4157 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| WAL-MART STORES, INC., d/b/a SAM'S CLUB Store Number 6349, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On January 28, 2016, Plaintiff Gail Sandle ("Plaintiff") initiated her cause of action for negligence against Defendant Sam's West, Inc.[1] ("Defendant" or "Sam's Club"), in the Circuit Court of Cook County, Illinois (Dkt. 1-3); Defendant removed the case to federal court based on diversity jurisdiction. (Dkt. 1.) In short, Plaintiff alleges she slipped and fell on liquid that Defendant had allowed to remain on the floor in the café area of Defendant's Sam's Club Store located in Evergreen Park, Illinois. (Dkt. 48, p. 1.)

After discovery in this matter, Defendant filed a summary judgment motion. (Dkt. 36.)[2] As part of the briefing on that motion, the following pertinent facts emerged: Plaintiff was shopping with her friend, Vanessa Anderson ("Anderson"), on February 1, 2014; after checking out, Plaintiff went to the café area, and slipped and fell on the floor while attempting to sit down on a bench in the café area. (Dkt. 48, p. 1.) Plaintiff could not identify any liquid, food, or other substance that caused her to fall; she did not know how long the substance she claims caused her to slip had been on the floor; she did

---

[1] Although the caption names the Defendant as "Wal-Mart Store, Inc. d/b/a Sam's Club Store Number 6349," Defendant asserts that the proper party is "Sam's West, Inc." (Dkt. 39.)

[2] There was a near-fatal error with Plaintiff's summary judgment briefing, as detailed in our April 17, 2017 Order:
  The Court has reviewed the materials related to Defendant's Motion for Summary Judgment, and finds that Plaintiff has violated Local Rule 56.1(b)(3) by failing to respond to Defendant's statement of material facts. Although the Court would be within its rights under Local Rule 56.1(b)(3)(C) to deem each of Defendant's facts admitted, the Court has decided, pursuant to FRCP 56(e)(1), to give Plaintiff an opportunity to respond to Defendant's statement of material facts….
(Dkt. 43.) Defendant also failed to file any material facts of her own until prompted by the Court in Docket 43.

not know if anyone of Defendant's employees knew that the area where she fell was slippery; and she did not know if any of Defendant's employees had caused the relevant area to be slippery. (*Id.* at 1-2.)

Anderson testified in her deposition that she saw Plaintiff's fall, and noticed after the fall that the floor was wet. (*Id.* at 2.) She described the wet area as a puddle about one foot long and several inches wide. (*Id.*) After she noticed the puddle, Anderson found a store employee, who told Anderson that the area had "just been mopped," but Anderson was unsure how long it had been since the area had been mopped. (*Id.*)

There also exists video surveillance footage of the incident provided by Defendant, which the Court reviewed as part of the summary judgment materials. (Dkt. 38, Ex. H.)

On May 30, 2017, the Court denied Defendant's Motion for Summary Judgment, almost wholly based on the fact that Anderson's testimony created a question of material fact for the jury. (Dkt. 48.) Shortly thereafter, on June 19, 2017, the Court set the jury trial in this matter to begin on November 6, 2017.

As part of the pretrial motions *in limine*, Defendant raised the issue of the adequacy of Plaintiff's witness disclosures. (Dkt. 56, Issues #6 and #7.) The Court held its final pretrial conference on October 17, 2017 and made the following ruling as to those disclosures:

> On Issues #6 and #7, the Court finds that Plaintiff did not adequately disclose Plaintiff's orthopedic surgeon on issues related to causation or the permanency of Plaintiff's injury. However, rather than bar such testimony, the Court believes that a more fair and prudent way to remedy any prejudice from Plaintiff's failure to make the appropriate disclosures is to allow Defendant to take the orthopedic surgeon's deposition on the aforementioned topics.

(Dkt. 57.) In rapid succession thereafter, Defendant took the deposition of Plaintiff's orthopedic surgeon and the Parties provided the Court with a transcript of that deposition in order to allow the Court to rule on any objections. The Court then reviewed the transcript and noted Defendant's renewed objection to any opinions offered by the orthopedic surgeon as to the Plaintiff's injuries and future injuries because Plaintiff failed to disclose these opinions pursuant to Rule 26. (Dkt. 59.) In

response to this failure, the Court postponed the trial to allow Defendant to call its own expert witness on these issues to cure any prejudice caused by Plaintiff's failure to properly disclose the expert opinions of the orthopedic surgeon. (Dkts. 59-60.) The trial was reset for February 12, 2018 through February 16, 2018. (Dkt. 60.)

On Monday, February 12, 2018, on what was to be the first day of a scheduled five-day jury trial, with counsel for Plaintiff and Defendant ready to proceed with trial, as well as the Court and a pool of potential jurors, Plaintiff herself failed to appear.[3] Plaintiff's counsel represented on the record that Plaintiff's failure to appear was due to an apparent medical condition, but counsel was unable to give any more details about what that condition might be or when it might be resolved. (Dkt. 67.) Neither the Court nor counsel had any prior warning that Plaintiff would not appear to meet her obligations or prosecute her case on that first day of trial.[4]

Plaintiff's counsel informed the Court that Plaintiff allegedly had a doctor's appointment scheduled the next day, February 13, 2018. Therefore, the Court set the matter for status on February 14, 2018 and ruled that "Plaintiff is ordered to present documentation of medical condition -- including diagnosis and prognosis -- before the Court continues the trial." (Dkt. 67.) The Court also advised Plaintiff's counsel that there are costs that are associated with calling up jury pool and that Plaintiff should be responsible for those costs if her excuse for nonattendance was not adequate.

At the February 14, 2018 status, Plaintiff's counsel reported that he had been unable to contact

---

[3] Plaintiff's friend and witness, Ms. Anderson, also appeared on February 12, 2018 for trial, as did Defendant's store manager as a corporate representative.

[4] Plaintiff's counsel represented that he had spoken to Plaintiff several times the prior week and that although Plaintiff expressed she "was not feeling well", she would indeed be present at trial. The first indication of anything amiss seems to be a mere 12-hours before trial was to start, in the form of a voicemail Plaintiff left for her counsel on his office phone on Sunday evening, February 11, 2018 near 10:00 p.m. stating that it was urgent he return her call. (Plaintiff's counsel did not indicate that Plaintiff relayed anything about her alleged inability to attend trial the following morning.) Plaintiff thereafter left her counsel another office voicemail at 8:45 a.m. on the day of trial stating that she was "under a doctor's care" and to call her back. When Plaintiff's counsel finally was able to reach Plaintiff near the 10:00 a.m. scheduled start for trial, Plaintiff apparently offered her counsel a series of vague excuses for her nonappearance, such as that she was "under a doctor's care"; she was "under some type of medication" she was being weaned off of; she has "some sort of emotional issues going on right now"; "she can't walk because of her legs"; and that she was not able to see her doctor on Friday (2/9/2018) because of a snowstorm and that's why she "had a bad weekend" but she was planning to see the doctor on Tuesday (2/13/2018). *See* February 12, 2018 transcript.

the Plaintiff to produce the required medical documentation, despite multiple efforts. (Dkt. 68.) The Court also advised Plaintiff that the costs to call up the jury pool in the instant matter were "well over $1,000" and reminded him that should Plaintiff lose at trial, she would be responsible for Defendant's costs under Rule 54(d).

Although Plaintiff's counsel made an oral motion to voluntarily dismiss (Defendant orally objected and noted it was not in a position to agree to a voluntary dismissal due to the costs it had already incurred), the Court advised Plaintiff's counsel to file a written motion to voluntarily dismiss without prejudice in order that Plaintiff might enunciate her reasons that the dismissal should be without prejudice. (Dkts. 68, 70.)

Plaintiff has filed her motion to voluntarily dismiss without prejudice under Rule 41(a)(2) (Dkt. 71) and Defendant has filed a reply (Dkt. 72), which is now at issue before the Court. In her motion for voluntary dismissal, Plaintiff elusively states that she was unable to appear on the date of trial due to unidentified "health complications." (*Id.* at p. 3.) Plaintiff acknowledges that she was "unable to provide a doctor's documentation regarding her health status" as required by the Court, but fails to state why this is so. Given the quite serious implications of the failure to provide a valid excuse as enunciated by the Court to Plaintiff's counsel, it is inexplicable that over a week after her trial was scheduled to begin, Plaintiff is unable to provide a more precise recitation of the alleged "health complications" that kept her away from court, or to now append the required doctor's note to her motion.[5] Plaintiff's already somewhat dubious excuse has become even less clear than it was when she went AWOL. Perhaps the only excuse that the Court can fathom for these continued vagueries is that Plaintiff has *still* not been in contact with her counsel, although counsel may have been too polite to say so in the motion.

A dismissal without prejudice under Rule 41(a)(2) is within the sound discretion of the district court. *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988). Some of the factors set out by the

---

[5] Or to otherwise provide it to the Court if it contained protected medical information.

Seventh Circuit, in *Pace v. S. Exp. Co.*, justifying denial of a motion to dismiss without prejudice are the "defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, [or] insufficient explanation for the need to take a dismissal…" *Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969). Here, Plaintiff has failed to meet the standards of a motion for voluntary dismissal without prejudice.

It is not that Plaintiff's case was on the eve of trial when Plaintiff failed to show up to prosecute her case, but the case was actually *at* the hour of trial when Plaintiff's counsel reluctantly informed the Court that he had just moments before gotten ahold of Plaintiff who reported that she would not be showing up to trial that day. This case has been pending for over two years (much like the Seventh Circuit *Pace* case), and discovery was complete, including last-minute expert discovery necessitated by Plaintiff's failure to disclose certain expert opinions.[6] Literally everything was in place for trial to begin except the Plaintiff. It is understandable that Defendant went through significant effort and expense in preparation for trial; this fact is understood even without Defendant's counsel specifying so as he did in objection to Plaintiff's counsel's oral motion to dismiss on February 14, 2018 and in Defendant's Response to Plaintiff's Motion for Voluntary Dismissal (Dkt. 72). In addition to the legal effort and time defense counsel put forth to prepare for both scheduled trials in this matter, as to the February 2018 trial, "Defendant retained and paid an expert to be ready to testify on day one of trial [and] hired technical support to assist with operating equipment needed for the first day of trial." (*Id.* at p. 3.)

In addition to this factor cutting against dismissal without prejudice, there has indeed been excessive delay and a lack of diligence on the part of Plaintiff in prosecuting this action. In her motion Plaintiff alleges she "was ready to proceed to trial back in November 2017" but for the continuance to February 2018. [Dkt. 71, p. 3.] This is simply false. The November 2017 trial was continued *as a direct result* of Plaintiff's failure to disclose Plaintiff's treating physician as expert with opinions about

---

[6] Discovery has been closed for over a year (2/27/2017; Dkt. 33), save for Plaintiff's expert discovery snafu. *See* fn. 7, *infra*.

causation or permanency. *See* October 17, 2017 final pretrial conference transcript and dkts. 59-60.[7] In addition, the summary judgment briefing schedule in this case was extended by several weeks due to Plaintiff's failures to properly follow the Federal Rules of Civil Procedure and the Local Rules of this Court as they relate to motions for summary judgment. *See* fn. 2, *supra*. Finally, the capstone in this record of delay is Plaintiff's failure to appear on February 12, 2018 at her own trial without satisfactory explanation.

As to the last factor enunciated in *Pace*, while Plaintiff's counsel has detailed Plaintiff's desire to take a voluntary dismissal in this matter, the vague explanation for Plaintiff's failure to appear such that this dismissal is necessitated is insufficient. No such satisfactory explanation has been forthcoming from the Plaintiff in the two-plus-weeks since her trial was scheduled to begin. Thus, the Court is doubtful of the veracity of Plaintiff's claims that her "health complications" were such that she was medically prevented from prosecuting this matter on her behalf on February 12, 2018.

The *Pace* factors enumerated above "act as a guide for the court in exercising its discretion, and all factors need not be present" for the court to deny a motion for voluntary dismissal. *Shrader v. Palos Anesthesia Assocs., S.C.*, 2003 WL 22225616, at *1 (N.D. Ill. Sept. 24, 2003). Here, the Court fairly believes all three of these factors have been met. Therefore, Plaintiff's Motion for Voluntary Dismissal without Prejudice Pursuant to Rule 41(a)(2) (Dkt. 71) is denied.

However, on its own motion, pursuant to Federal Rule of Civil Procedure 41(b), the Court dismisses this matter for want of prosecution, with prejudice. "Although dismissal is a harsh sanction that should be imposed infrequently," the Seventh Circuit has "recognize[d] that the power to sanction through dismissal is essential to the district courts' ability to manage efficiently their heavy caseloads

---

[7] In allowing Plaintiff's treating physician to be deposed and allowing Plaintiff to explore the ideas of causation and permanency at that deposition, the Court noted that it took pity on Plaintiff and her counsel so that Plaintiff's case would not be decided on a technicality (*i.e.*, Plaintiff would be unable to prove her damages without these previously undisclosed opinions). The Court notes here that while he was frustrated with potentially being unable to find on short notice an expert of his own to counter Plaintiff's doctor's expert opinions, Defense counsel, Mr. James Balog, was more than courteous in volunteering that Plaintiff's expert disclosure failure was inherited by Plaintiff's trial counsel, Mr. Daniel Yukich, from an associate at Mr. Yukich's firm who had been responsible for Plaintiff's case before trial.

and thus protect the interests of all litigants." *Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 699 (7th Cir. 2014) (internal citation omitted). The reasons supporting this dismissal are detailed below.

The case of *Kasalo v. Harris & Harris*, 656 F.3d 557 (7th Cir. 2011) most succinctly lays out the factors a court should consider in dismissing for want of prosecution. They are as follows: (1) the frequency of the plaintiff's failure to comply with deadlines; (2) whether the responsibility for mistakes is attributable to the plaintiff herself or to the plaintiff's lawyer; (3) the effect of the mistakes on the judge's calendar; (4) the prejudice that the delay caused to the defendant; (5) the merit of the suit; and (6) the consequences of dismissal for the social objectives that the litigation represents. *Kasalo*, 656 F.3d at 561 (citations omitted).

It may initially seem like Plaintiff missed a single, massive deadline in this case when she failed to appear for trial. Arguably, this is the most egregious of Plaintiff's failures, but it is not the only deadline that was missed/extended due to Plaintiff. At the February 12, 2018 hearing, Plaintiff was warned, though her counsel, about the consequences, including dismissal, if she failed to provide an adequate medical excuse for her failure to appear when the court reconvened two days later for a status on Plaintiff's nonappearance. Then, Plaintiff missed a second deadline: not only did Plaintiff fail to provide the Court with any excuse at all on February 14, 2018, but she failed to respond to her own counsel in any manner when she was well aware of the consequences at stake by her continued failure to appear/provide a doctor's note. On February 14, 2018, the Court again warned Plaintiff's counsel about the possibility of a dismissal for want of prosecution, and gave Plaintiff an opportunity to provide a written motion for voluntary dismissal, wherein Plaintiff could have detailed the sufficiency of her medical excuse. While this motion was indeed filed by Plaintiff's counsel, it is a (third) failure in the sense that it offers nothing in the way of clarification into why Plaintiff failed to present herself for trial on February 12, 2018. It seems this is through no fault of counsel, but rather, it appears to the Court that counsel was doing his best to advocate for a client who was likely still making herself unavailable to prosecute her case. These three massive failures, in combination with Plaintiff's expert

disclosure failure which caused the November 2017 trial date to be moved three days before it began and with Plaintiff's failure to properly respond to Defendant's summary judgment motion which caused the summary judgment briefing schedule to be extended, create enough of a pattern of a failure to comply with the rules, procedures, and deadlines of this Court such that this first *Kasalo* factor has been met.[8]

As to the second factor, whether the responsibility for mistakes is attributable to the Plaintiff or her counsel, here Plaintiff herself is responsible and bears the risk of dismissal. While the two procedural failures above are attributable to Plaintiff's counsel and have been mitigated by the Court so that Plaintiff herself was not prejudiced by any technical/procedural deficiencies attributable to her counsel, the three major failures to prosecute her case are solely attributable to Plaintiff. Plaintiff's counsel was present and ready for trial on February 12, 2018; Plaintiff was not, and offered, through her counsel, vague, unspecified health-related reasons for her failure to appear. Plaintiff failed to clarify her insufficient reasons for failing to appear on two separate occasions since that date. Since the date her counsel filed her motion for voluntary dismissal (February 20, 2018), Plaintiff has not supplemented her motion or otherwise notified the Court of a legitimate, documented medical reason for her failure to prosecute her case.

The third *Kasalo* factor is the effect on the judge's calendar. Not only has the Court had to move Plaintiff's trial once already because of the Plaintiff's failure to disclose expert witness opinions, but now Plaintiff has compromised another week of the Court's time. While the Court can (and did) complete other written work in this time, the Court also mediates settlement conferences for district court judges. The Court typically schedules these conferences 90 days out because of the high demand on the judge's schedule for these conferences, and the Court typically schedules 3-4 settlement conferences a week. These conferences cannot be scheduled at the last minute because each party is given the opportunity to provide pre-settlement conference letters to the Court and the due dates for

---

[8] Even if this factor were to be weighed in favor of the Plaintiff, the other factors clearly weigh against her.

these letters are tied to the settlement conference date to allow each party, and the Court, sufficient time to prepare and respond to the settlement positions of the other side. This means that because of these two weeks of delay, there are, conservatively, seven additional cases on the federal court docket that could have otherwise been settled. Not only have these delays personally had an effect on Judge Cox's calendar, but also on the federal docket as a whole.[9]

As *Kasalo* specifically suggests that the Court consider "the effect of the mistakes on the judge's calendar" (*i.e.*, all mistakes, not just those mistakes attributable to Plaintiff herself), we also note that the insufficiency problems with Plaintiff's summary judgment briefing (which the Court managed to keep on a tight timeline) also had a small effect on the Court's calendar and created additional work for the Court and its clerks. While it is extraordinarily difficult to follow a poorly-supported, slapdash document that fails to adhere to the Federal Rules of Civil Procedure and this Court's Local Rules, the Court is not required "to fish a gold coin from a bucket of mud" for a plaintiff so that her case is not dismissed on a technicality on summary judgment. *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Yet here we are. Plaintiff had every benefit of the doubt and procedural technicality resolved in her favor in this case so that she might have her day in court for a jury to rule on the questions of material fact in her case. That day in court began February 12, 2018. The Court cleared an entire week of her calendar for this trial. Plaintiff failed to show up.

As to the next factor, the prejudice that the delay caused the defendant, this factor does not heavily weigh against Plaintiff. While there is indeed delay that has been suffered by all involved, and that trial preparation time is unrecoverable, there is only negligible prejudice to a defendant where the ultimate resolution is a dismissal of plaintiff's claims, with prejudice, as the factors here ultimately add up to.

---

[9] Additionally, as we advised Plaintiff (through her counsel) twice in open court in February of 2018, there are significant costs to taxpayers as well, in the form of juror appearance fees. Per the jury department of the U.S. District Court for the Northern District of Illinois, the actual costs to call up the 16-person jury pool in the instant matter amount to $1,185, which includes a $40 attendance fee per juror plus their actual mileage traveled.

As to the fifth *Kasalo* factor, the merits of the suit, while the Court is not the factfinder in this matter, "it is entirely proper for the judge to consider the likely merits of the suit in deciding whether to dismiss it for failure to prosecute." *Ball v. City of Chicago*, 2 F.3d 752, 759 (7th Cir. 1993) (collecting cases). Moreover, "the less meritorious the suit, the less likely is it that dismissing it will impair the deterrent and compensatory objectives of the law under which the plaintiff was proceeding, by letting a wrongdoer get off scot-free." *Ball*, 2 F.3d at 759. Per our summary judgment ruling, a review of Anderson's testimony in conjunction with the surveillance video in the instant matter makes it clear that this case made it through summary judgment by the skin of its teeth. In fact, when the Court urged the Parties to settle in this matter, the Court noted that Plaintiff's case had survived summary judgment by the barest of margins. The Court is not convinced that by involuntarily dismissing the instant matter, an alleged wrongdoer would get off scot-free, or that the deterrent and compensatory objectives of the law would be impaired. Regardless, the Court cannot allow Plaintiff to unreasonably and deliberately hinder the progress and disposition of her case, whether her claims are meritorious or not. *See In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 2015 WL 12791432, at *5 (N.D. Ill. July 27, 2015).

Lastly, the sixth factor for the Court to consider is the consequences of dismissal for the social objectives that the litigation represents. This factor seems similar to a consideration of whether the deterrent and compensatory objectives of the law would be impaired, which we have already addressed above. Other cases in the Northern District have noted some additional potential aspects of this "social objectives" factor, none of which are present here. For instance, given that there is no alleged express or widespread policy of Sam's Club implicated here by Plaintiff, the consequences of dismissal for the social objectives are minimal. *See Price v. City of Chicago*, 2016 WL 305355, at *4 (N.D. Ill. Jan. 26, 2016). Likewise, a dismissal of the instant matter would not obstruct the social objectives underlying Plaintiff's claims as those objectives have been satisfied by resolution of many similar alleged slip and fall claims over the years. *See In re Ameriquest Mortg.*, 2015 WL 12791432, at *5.

Thus, involuntary dismissal under Fed. R. Civ. P. 41(b) in the instant matter is warranted for the

reasons detailed above. This case is hereby dismissed, with prejudice.


Entered: 3/2/2018

_____

U.S. Magistrate Judge, Susan E. Cox